UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                        :
SAMYANG FOOD CO., LTD,                  :        CASE NO. 5:05-CV-636
                                        :
            Plaintiff,                  :
                                        :
vs.                                     :        OPINION AND ORDER
                                        :        [Resolving Doc. No. 38, 40]
PNEUMATIC SCALE CORP.                   :
                                        :
            Defendant.                  :
                                        :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On September 20, 2005, Plaintiff Samyang Food Co., Ltd., filed a renewed motion for summary judgment. [Doc. 38]. Defendant Pneumatic Scale Corporation also filed a motion for summary judgment. [Doc. 40]. In this action to enforce a foreign judgment given by the Supreme Court of the Republic of Korea, each party says there are no material issues of fact and each seeks judgment as a matter of law. For the reasons described in this opinion, the Court GRANTS Samyang's motion for summary judgment, finding that the parties do not dispute any material facts and Plaintiff Samyang is entitled to judgment. The Court DENIES Pneumatic Scale's motion for summary judgment.

I. Background

On February 25, 2005, Plaintiff filed this action seeking to enforce a judgment entered against Defendant Pneumatic Scale by the Supreme Court of Korea, Korea's highest court. In seeking the enforcement of the judgment, Plaintiff Samyang says this Court must enforce the judgment

-1-

Case No. 5:05-CV-636
Gwin, J.

consistent with the requirements of Ohio Rev. Code § 2329.91.  Defendant Pneumatic Scale agrees

that Ohio Rev. Code § 2923.91 controls this Court's determination although Pneumatic says certain

factors defeat Samyang's effort to enforce the judgment in Ohio.

Near July 1991, Plaintiff Samyang and Pneumatic Scale Corp. entered a contract for the

purchase, installation and initial setup of three packaging machines for use in Samyang's food

processing business.  On May 15, 1992, Defendant Pneumatic Scale supplied Plaintiff with one

machine for packaging ramen and in November 1992, supplied two additional machines for

packaging ramen.  The parties contract contained no forum selection clause for contractual disputes

that could arise in the parties' relationship.

After the delivery and installation of the food processing equipment, Samyang complained

that the machinery did not conform to the terms of the contract nor to representations that Pneumatic

had made to secure the contract.  Specifically, Samyang said the machinery never operated at the

error rate provided by the parties contract.  After receiving complaints about the machinery's

performance, Defendant Pneumatic Scale attempted to repair the machine at Samyang's facilities

in Korea.

When Pneumatic's extensive efforts to repair the machine failed, Plaintiff Samyang sued

Pneumatic Scale in the Seoul District Court in the Republic of Korea for breach of contract and

sought money damages.  In November of 1999, the Korean Consulate General's office effected

proper service of the complaint against Pneumatic.  Pneumatic then retained Korean counsel and

contested Samyang's claim for three years, defending the claim on the merits and on jurisdictional

grounds.  Throughout the preparation and trial, retained counsel represented Pneumatic.

After a trial in which Defendant Pneumatic Scale disputed its responsibility for the

-2-

Case No. 5:05-CV-636
Gwin, J.

malfunctioning of the equipment, the Seoul District Court, a Korean trial court, entered judgment

in favor of Plaintiff Samyang and against Defendant Pneumatic Scale Corp. and Pneumatic's related

corporation, Barry-Wehmiller Companies, Inc., for approximately $900,000.

Defendant Pneumatic Scale appealed to the Seoul High Court, an intermediate Korean

appellate court.  Plaintiff Samyang filed a cross appeal. In July 2002, the intermediate Korean

appellate court reversed the judgment against the Barry-Wehmiller Companies Inc., Pneumatic's

parent corporation, but affirmed the decision against Defendant Pneumatic Scale.  The appellate

court entered judgment in the amount of $1,075,668 plus 119,684,250 Korean Won together with

interest at 6% from May 17, 2001 to July 5,2002 and at 25% per annum from July 5, 2002, until the

judgment was paid.[1]

Defendant Pneumatic Scale then filed an appeal to the Supreme Court of the Republic of

Korea in July 2002.  The Supreme Court is Korea's highest court and its court of last appeal.  The

Korea Supreme Court accepted jurisdiction over the case.  On December 11, 2003, the Supreme

Court of the Republic of Korea entered a modified judgment against Defendant Pneumatic.  In that

judgment, the Supreme Court gave judgment to Plaintiff Samyang and against Pneumatic Scale

Corp. in the amount of $1,075,668 and 119,684,250 Korean Won plus the interest on both amounts

at the rate of 6% per annum from May 17, 2001, to May 31, 2003, and 20% per year for the period

after May 31, 2003, until paid.[2]

As will be described, Defendant Pneumatic Scale here argues that this judgment of Korea's

highest court is not enforceable because Samyang did not comply with a requirement to redeliver

---

[1]Korea uses a high post-judgment interest rate to encourage payment of judgments.

[2]Under Korean law, the 20% rate only became effective after May 31, 2003, Korean Special Law No. 6868.

Case No. 5:05-CV-636
Gwin, J.

the equipment in its condition at the time of the Defendant Pneumatic Scale's breach of contract.

In speaking to this issue, the Korean Supreme Court adopted the damage determination found by

the Seoul High Court:

> [S]ince the Agreement was terminated as established by the facts of the case, ordered
> Defendant to return to Plaintiff the amount Plaintiff paid for the machines plus
> interest, and to reimburse Plaintiff for the custom duties, transportation charges
> insurance and other costa and expenses paid by Plaintiff to import the machines into
> Korea, and the amounts Plaintiff paid to Defendant's engineers for their stay in Korea
> during the engineers' attempt to repair the machines. The court rejected Defendant's
> claim that Plaintiff's error caused the machines to fail and the increase in damages
> Plaintiff suffered.
>
> After examination of the record of the Original Court Judgment, this court finds that
> the findings and the judgment of the Seoul High Court were proper and lawful and
> cannot find that the decision of the Seoul High Court was in violation of the Rules
> of Evidence, nor that the court misconstrued the facts. This court also finds that the
> decision to return the price of the machines to Plaintiff and to award Plaintiff
> damages, the scope of the damages and the rejection of Defendant's contributory
> negligence claim are lawful.

In setting out damages, nothing before this Court suggests that Defendant Pneumatic Scale

made any argument that no damages were owing until the machines were returned to it.  Nor did the

Korean Supreme Court condition Plaintiff Samyang's right to collect its judgment upon the return

of the machine.

Pneumatic's right to the return of the machine is found in the Seoul High Court's opinion.

In that opinion, the Seoul High Court ruled:

> (e) Regarding Delay Payment Against Defendant 2 [Pneumatic Scale].  Due to the
> fact that the machines in this case have a special commercial nature and mechanical
> characteristics and the fact that Defendant 2 is located abroad in the U.S., Plaintiff
> claims that Defendant 2 should take back the machines at the place of delivery which
> should be where the machines are currently located.  Plaintiff further claims that
> Defendant 2 should make delay payment of 25% per annum from the date of service
> of the written complaint to the date of full payment of the price of the machines and
> damages since Plaintiff fulfilled its obligation of offering the return of the machines

-4-

Case No. 5:05-CV-636
Gwin, J.

by notifying Defendant 2 to take receipt of the machines through the written complaint filed in this litigation. Defendant 2 argues that the return of the machines should be exchanged with Defendant 2's obligations to pay the purchase price and the delay compensation payment.

In examining the claim that Defendant 2 is liable to refund the price of the machines and to pay damages in exchange for the return of the machines, this court finds that Plaintiff and Defendant 2 agreed to the method for the return of the machines such that the "buyer will, at his expense, remove the machine from the line and skid it for shipment to the location designated by seller, and seller will provide instructions and supervision for this process at seller's expense," and that Plaintiff terminated the Agreement by means of the written complaint sent to Defendant 2 as discussed above. . . . Due to the termination of the Agreement by Plaintiff, the machines were to be returned to Defendant 2, and in order for the machines to be returned to Defendant 2, Defendant 2 was required to provide instruction and supervision for the return of the machines including the designation of the place from where the machines were to be shipped. However, rather than perform such obligations necessary for the return of the machines, Defendant 2 argued against the termination of the Agreement and clearly expressed its refusal to receive the return of the machines. From the record, it is evident that Plaintiff completed its offer for the return of the machines to Defendant 2 by means of filing of the corollary appeal in this trial which was delivered to Defendant 2 on May 16, 2001.  However, in a bilateral contract when one party initially makes an offer for performance of an obligation, and when the offer for performance is not continuously remade, the offer for performance made only once in the past does not necessarily nullify the other party's right for simultaneous exchange. This court finds that Defendant 2's obligation to pay Plaintiff the entire amount of the price of the machines plus damages plus the delay compensation payment is in the relationship of exchange with the corresponding Plaintiff's obligation to make an offer for the return of the machines to Defendant 2.

The Korean Supreme Court adopted this reasoning without change.

After receiving the judgment of the Korean Supreme Court, Plaintiff Samyang brought this action to enforce the Korean judgment consistent with Ohio Rev. Code § 2329.91.  The plaintiff says, consistent with that provision, this Court must enforce the judgment of the Korean Supreme Court.  Responding, Defendant Pneumatic Scale says the judgment is not enforceable under Section 2329.91.

-5-

## II. Legal Standard

Summary judgment is appropriate when the evidence submitted shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In seeking summary judgment, the moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the nonmoving party's case. *Waters v. City of Morristown*, 242 F.3d 353, 358 (6th Cir. 2001). A fact is material if its resolution will affect the outcome of the lawsuit. *Daughenbaugh v. City of Tiffin*, 150 F.3d 594, 597 (6th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In deciding whether the moving party has met this burden, a court must view the facts and draw all inferences in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). However, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). It is not sufficient for the nonmoving party merely to show that there is some metaphysical doubt as to the material facts. *See id.* Additionally, the Court has no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989).

A factual dispute precludes summary judgment only if it is material, that is, if it relates to a matter essential to adjudication. The dispute must concern facts that, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson*, 477 U.S. at 248. The factual dispute also must be genuine. The facts must be such that if proven at trial a reasonable jury could

-6-

Case No. 5:05-CV-636
Gwin, J.

return a verdict for the nonmoving party.  *Id.* at 248.  "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial."  *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)); *see also Celotex*, 477 U.S. at 322.

Here, the parties present no relevant factual disputes.  Instead, the parties dispute the application of law to largely undisputed evidence.  In light of this, the Court finds this case is appropriately determined upon summary judgment.

### III.  Analysis

*A. Enforcement Of Foreign Judgments*

Like sister-state judgments, foreign judgments have a strong presumption of validity in United States courts.  *See Clarkson Co. v Shaheen* 544 F2d 624, 631 (2nd Cir. 1976) ("A foreign judgment may not be collaterally attacked "upon the mere assertion of the party that the judgment was erroneous in law or in fact, . . . Clear and convincing evidence of fraud is required in order successfully to attack a foreign judgment, just as such proof is necessary before a court will set aside its own judgment.")  The party challenging the validity of a foreign judgment has the burden of presenting evidence of its invalidity.

The Restatement (Third) of Foreign Relations Law of the United States, 481, describes this standard rule:

(1) Except as provided in § 482, a final judgment of a court of a foreign state granting or denying recovery of a sum of money, establishing or confirming the

Case No. 5:05-CV-636
Gwin, J.

> status of a person, or determining interests in property, is conclusive between the
> parties, and is entitled to recognition in courts in the United States.
>
> (2) A judgment entitled to recognition under Subsection (1) may be enforced by any
> party or its successors or assigns against any other party, its successors or assigns,
> in accordance with the procedure for enforcement of judgments applicable where
> enforcement is sought.

Unless some federal statute or treaty is involved, the recognition and enforcement of foreign country judgments is a matter of state law.  Actions to enforce a foreign country judgment does not arise under the laws of the United States. Therefore, federal courts apply state law in deciding whether foreign judgments should be recognized.  *Erie v. Tompkins*, 304 U.S. 64 (1938).

Under Ohio law, foreign judgments are conclusive and are entitled to enforcement absent limited challenges.  Ohio Rev. Code § 2329.91 provides:

> (A)  Except as provided in sections 2329.92 and 2329.93 of the Revised Code, any
> foreign country judgment that is final, conclusive, and enforceable where rendered
> shall be recognized and enforced by the courts of this state, even though an appeal
> from the judgment is pending or the judgment is subject to an appeal. Such a foreign
> country judgment is enforceable in this state in the same manner as a judgment of
> another state that is entitled to full faith and credit.
>
> (B)  For purposes of division (A) of this section, a foreign country judgment is
> conclusive between the parties to the extent that it grants or denies the recovery of
> a sum of money, except that, if any of the following applies, a foreign country
> judgment is not conclusive:
>
> (1) The judgment was rendered under a system that does not provide impartial
> tribunals or procedures that are compatible with the requirements of the due process
> of law;
>
> (2) Subject to divisions (C) and (D) of this section, the foreign court did not have
> personal jurisdiction over the defendant;
>
> (3) The foreign court did not have jurisdiction over the subject matter.

Initially, Defendant Pneumatic Scale says that the Samyang judgment should not be

Case No. 5:05-CV-636
Gwin, J.

recognized because Korea does not offer, and Pneumatic could not receive a jury trial on its contract claim.  Under Korean law, the case was submitted to a three-judge panel.

In *The Society of Lloyd's v. Ashenden*, 233 F. 3d 473 (7th Cir. 2000), Judge Posner dealt with a similar argument also involving Illinois version of the Uniform Foreign Money-Judgments Recognition Act.  In that case, Lloyd sued to enforce an English judgment against various underwriters.  Those defendants challenged whether the English judgment should be enforced by pointing out differences with the Illinois system.  In the English hearing, the debtors were stopped from applying a set-off to the claim or from asserting that the underlying contract had been induced by fraud.  Second, English law adopted a "conclusive evidence" clause, that made Lloyd's determination of the amount of the assessment "conclusive" "in the absence of manifest error." 233 F.3d at 478-79.

The Seventh Circuit, through Judge Posner, rejected the argument that these limitations made the British system "a system that does not provide impartial tribunals or procedures that are compatible with the requirements of the due process."  Posner wrote:

> Not that the English concept of fair procedure is identical to ours; but we cannot believe that the Illinois statute is intended to bar the enforcement of all judgments of any foreign legal system that does not conform its procedural doctrines to the latest twist and turn of our courts regarding, for example, the circumstances under which due process requires an opportunity for a hearing in advance of the deprivation of a substantive right rather than afterwards. It is a fair guess that no foreign nation has decided to incorporate our due process doctrines into its own procedural law; and so we interpret "due process" in the Illinois statute . . . to refer to a concept of fair procedure simple and basic enough to describe the judicial processes of civilized nations, our peers. The statute requires only that the foreign procedure be "compatible with the requirements of due process of law," and we have interpreted this to mean that the foreign procedures are "fundamentally fair" and do not offend against "basic fairness."

Case No. 5:05-CV-636
Gwin, J.

233 F.3d at 476-77.

Posner's reasoning makes sense.  The Uniform Act and Ohio law do not contemplate that foreign judgments only become enforceable when exact Ohio's procedures are followed.  Instead, the statute concerns itself with whether the foreign court offers a fair procedure generally compatible with the due process obligations of notice and opportunity to be heard.

The Korean procedures provided a fair hearing, irrespective of whether Korea offers a right to a jury trial.  The Korean judicial system provides substantially the same substantive and procedural due process protections as those afforded by Ohio.  In Korea, parties receive notice, the right to the legal counsel, the right to present evidence and witnesses and to examine evidence offered against them, and a right to appeal to a higher court.

Defendant Pneumatic Scale's experience supports this.  Pneumatic received notice of Samyang's claim, retained its own counsel, presented extensive evidence and arguments, and then appealed, not once but twice.  To a significant degree, in the Korean case Pneumatic succeeded on major issues.  It reversed the initial judgment against its parent company.  It avoided liability for special damages associated to a loan Samyang took out to fund the machinery, and it succeeded in other respects.  The trial and reviewed courts provided reasoned explanations for their judgments.

Pneumatic complains that it did not receive a jury trial.  In affording jury trials in civil cases, the United States is the exception, not the rule.  Many justice systems do not offer a jury in criminal, let alone civil matters.  Still, those systems can comport with due process if notice and an opportunity to be heard by a neutral magistrate is allowed.  *See Hilton v. Guyot*, 16 S.Ct. 139, 159 (1895) ("[W]e are not prepared to hold that the fact that the procedure in these respects differed from

-10-

Case No. 5:05-CV-636
Gwin, J.

that of our own courts is, of itself, a sufficient ground for impeaching the foreign judgment . . . . It must, however, always be kept in mind that it is the paramount duty of the court before which any suit is brought to see to it that the parties have had a fair and impartial trial, before a final decision is rendered against either party.").

Under Ohio law, a foreign judgment can be impeached if the foreign court did not have personal jurisdiction over the defendant.  Defendant Pneumatic Scale does not plausibly contest that Korea had personal jurisdiction.  As described, Pneumatic had supplied and installed an extensive food packaging system to Korea, had sent it personnel to install the equipment and try to correct the equipment and knew the equipment and related services would be performed in Korea.  Under Ohio law, a foreign judgment could alternatively be impeached if the foreign court did not have jurisdiction over the subject matter.   Nothing suggests that the Korean court did not have subject matter over the dispute.

*B.  Whether The Korean Judgment Was Sufficiently Final To Support Enforcement*

Under Ohio Rev. Code § 2329.91, to be enforceable in Ohio, a foreign judgment must be "final, conclusive, and enforceable where rendered."  Defendant Pneumatic Scale argues that the Korean judgment should not be honored in the United States because it would not be honored in Korea.  To get to this position, Defendant Pneumatic Scale says that Korean courts would not enforce the Korean Supreme Court judgment because Samyang had not returned the food packaging machinery to Pneumatic in the same condition as the machinery existed at the time of breach.

By way of background, Pneumatic contracted in 1991 to supply packaging machines to Samyang.  The contract required Pneumatic to install packaging machines that met certain operating efficiencies.  If the machines, after installation, failed to meet these performance criteria, Samyang

-11-

Case No. 5:05-CV-636
Gwin, J.

could require repair to the machines, all at Defendant Pneumatic's expense.

After installing the machines near May 1992, Pneumatic ran tests on the machines.  The machines failed to meet the performance levels provided in the Agreement. After failing to meet the performance standards that it had agreed to, Pneumatic continued to make repairs and continued to test the machines up to the end of December, 1996.  The machines never operated as represented or warranted and were never used in full scale production in Plaintiff Samyang's Korean factory.  From 1999, Plaintiff Samyang had requested recision of the contract and a return of the money it paid for the machinery.

As described, Samyang sued Pneumatic for recision of the contract in Korea after Pneumatic failed to correct the error rate.  Defendant Pneumatic responded and argued that the defects in the machines was caused by the mishandling of the machines by Plaintiff Samyang.

The Seoul appellate court found Defendant Pneumatic Scale had breached its contract and found that Pneumatic was liable to return to Plaintiff Samyang the price of the machines in the amount of $895,000 as restitution, and other related damages.  Importantly, that Court discussed the obligation of Plaintiff Samyang to return the equipment:

> [T]his court finds that Plaintiff and Defendant 2 [Pneumatic] agreed to the method for the return of the machines such that the "buyer will, at his expense, remove the machine from the line and skid it for shipment to the location designated by seller, and seller will provide instructions and supervision for this process at seller's expense," and that Plaintiff terminated the Agreement by means of the written complaint sent to Defendant 2 as discussed above. This court also recognizes, as also argued in the corollary appeal of this trial, that Plaintiff prepared the machines to be returned and duly notified Defendant 2 as the receiver. Due to the termination of the Agreement by Plaintiff, the machines were to be returned to Defendant 2, and in order for the machines to be returned to Defendant 2, Defendant 2 was required to provide instruction and supervision for the return of the machines including the designation of the place from where the machines were to be shipped. However,

Case No. 5:05-CV-636
Gwin, J.

> rather than perform such obligations necessary for the return of the machines,
> Defendant 2 argued against the termination of the Agreement and clearly expressed
> its refusal to receive the return of the machines .

Having failed to provide directions or assistance in the return of the equipment, Pneumatic now says that Samyang's failure to effectuate the return makes the judgment of the Korean Supreme Court not final and not enforceable in either Korea or Ohio.

The core of the Uniform Foreign Money-Judgments Recognition Act, is that a foreign judgment is conclusive between the parties to avoid re-litigation of a case in the same manner as the judgment of a sister state which is entitled to full faith and credit. Under § 2 of the Uniform Foreign Money-Judgments Recognition Act, foreign judgments are "final and conclusive" even where the judgment is possibly subject to change.  For example, in *Dart v. Dart*, 224 Mich. App. 146, 568 N.W.2d 353 (1997), *aff'd on other grounds*, 460 Mich. 573, 597 N.W.2d 82 (1999), *reh'g denied*, 602 N.W.2d 576 (Mich. 1999), *cert. denied*, 120 S. Ct. 1418 (2000), the Michigan Court found an English judgment awarding a wife certain property, a certain division of monies and child support was final and enforceable in Michigan under the state Uniform Foreign Money-Judgments Recognition Act, though English law made judgments on financial matters in matrimonial actions interlocutory. *See also*, *Desjardins Ducharme v. Hunnewell*, 411 Mass. 711, 585 N.E.2d 321 (1992) (holding that judgment awarding costs to law firm was final even though the underlying litigation continued).

Having reviewed the Korean judgments, the Court finds nothing suggesting that the Korean courts, including the Korean Supreme Court conditioned Samyang's right to collect judgment upon the return of the equipment.  To the contrary, the Korean courts found that Pneumatic bore the obligation of arranging the return of the equipment.  Nothing shows that Pneumatic made any effort

Case No. 5:05-CV-636
Gwin, J.

to cause the return of the equipment.  Regarding deterioration to the equipment over the five years that it sat in a factory warehouse, Pneumatic shows no evidence that Samyang mistreated the equipment, only evidence that it deteriorated as it sat, unused, in a factory for over five years as Pneumatic contested its obligation to compensate Samyang for damages.

Because the Court finds that the Korean decisions do not require Samyang to initiate the return of the equipment before proceeding to enforce the judgment, the Court turns to decide whether Korean law conditions a party's ability to enforce a money judgment of the Korean Supreme Court on a contract claim upon a return of the equipment involved with the contract.  This Court's decision on the nature of Korean law is a question of law, not a question of fact.  *See* Fed. R. Civ. P. 44.1 ("The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination shall be treated as a ruling on a question of law."); *Society of Lloyd's v. Ashenden*, 233 F.3d 473 (7th Cir. 2000) (in deciding whether a foreign judgment was "rendered under a system which does not provide impartial tribunals or procedures compatible with the requirements of due process of law," a federal court is not limited to the consideration of evidence that would be admissible under the Federal Rules of Evidence, and any relevant material or source may be consulted).

To support its argument that the Korean Supreme Court's Judgment in favor of Samyang would not be effective in Korea, Pneumatic largely relies upon opinion evidence of Jun Hyok Jang, a Korean law professor.  Jang recognized that the Korean courts determined that Samyang Foods tendered the return of the machines to Pneumatic Scale in 1999, but Jang gives the opinion that Korean law required the return of the machines as a condition precedent for enforcement of the

-14-

Case No. 5:05-CV-636
Gwin, J.

judgment.  In addition, defendant expert Jang says that Samyang needed to return the equipment to

Pneumatic in the condition that existed at the time of Pneumatic's breach.  Recall, the Korean courts

found Plaintiff Samyang had tendered the return of the equipment to Pneumatic in 1999, but

Pneumatic had refused to provide any directions or shipping to accomplish the return.  Because the

equipment naturally deteriorated during the time the Korean courts found Pneumatic refused to

accept it, Pneumatic says Korean law relieves it from the judgment.

Although neither the Seoul High Court nor the Supreme Court of Korea had ordered the

plaintiff to return the equipment in the same condition it was in as of the time of the breach,

Professor Jang states that this requirement is implied in Korean law.  However, Professor Jang gives

little support for his interpretation of Korean law.

When interpreting Korean law, the Court first looks to Korean statutes, the decisions of the

Korean Supreme Court and its intermediary appellate court.  In their decisions in this case, neither

conditioned Pneumatic's obligation to pay the judgment upon the return of the machinery.  Instead,

both courts imposed obligations on each party, and never made Pneumatic's obligation conditioned

upon Samyang's return of the equipment.  Second, the Korean courts never mention any obligation

that the machinery be returned to the condition it had been in before the aging associated with the

years this case was litigated in the Korean courts.

Professor Jang's opinion also runs counter to generally recognized American contract law.

As Corbin explains: "A repudiation or other total breach by one party enables the other to  get a

judgment for damages or for restitution without performing acts that would otherwise have been

conditions precedent. It is no longer necessary for the plaintiff to perform or to tender performance.

This is true whether the repudiation is in express words or is by an act that makes performance by

-15-

Case No. 5:05-CV-636
Gwin, J.

the repudiator apparently impossible or very improbable.  5 Corbin, THE LAW OF CONTRACTS (1951) Section 977, 920, 922.

In support of his opinion that Korean law makes the Korean Supreme Court's judgment unenforceable, Jang cites to three provision of Korean law.  None support his opinion that the return of the machinery was a condition precedent to Pneumatic's obligation to pay the judgment.  As described above, the Korean opinions say nothing that supports that claim and the expert's opinion cites no support for his opinion that such was required.[3/]

The Korean Supreme Court decision supports this.  That decision incorporated the Seoul High Court's decision.  As discussed, that Court had found Defendant Pneumatic Scale was required to provide instruction and supervision for the return of the machines including the designation of the place from where the machines were to be shipped. However, rather than perform such obligations necessary for the return of the machines, Pneumatic argued against the termination of the Agreement and clearly expressed its refusal to receive the return of the machines.

The Korean Judgments ordered Defendant Pneumatic Scale to pay Plaintiff Samyung

_____

[3/]Mr. Jang relies upon Articles 548, 549, and 563 in his report. Those provisions say:

Article 548 (Effect of Rescission) (1) If one of the parties has rescinded the contract, both parties shall be liable to restore each other to his original position; provided, however, that the rights of a third party shall not be prejudiced thereby. (2) Interest shall be paid upon any money to k repaid in the case referred to in the preceding paragraph from the day when such money was received.

Article 549 Recision and Simultaneous Performance) The provision of Article 536 shall apply mutatis mutandis to the case mentioned in the preceding Article.

Article 536 (Defense of Simultaneous Performance) (1) One of the parties to a billeted contract may refuse performance of his own obligation until the other party tenders performance of his obligation. However, this shall not apply in the event that the obligation of the other party is not due. (2) If one of the partes to a contract is bound to tender performance of his own obligation to the other parry, and if there is just reason to believe that the other party's performance becomes difficult, the main stipulation of the preceding paragraph shall apply.

-16-

Case No. 5:05-CV-636
Gwin, J.

damages and for Samyung to return the machinery to Pneumatic Scale.  *See United States v. Garland*, 991 F.2d 328, 335 (6th Cir. 1993) (foreign judgment is prima facie evidence of facts and opinions contained therein).  Given the Korean courts' finding, and given the lack of evidence that Korea conditions Defendant Pneumatic Scale's obligation to pay the judgment on the return of the equipment in their condition a the time of breach, the Court finds Defendant Pneumatic Scale's argument not persuasive.

*C.  Whether Korea Offers Reciprocal Enforcement Of Ohio Judgments*

Finally, Defendant Pneumatic Scale argues that the Korean judgment is not enforceable because Korea does not offer reciprocal recognition of Ohio judgments.  Defendant Pneumatic Scale has the burden of showing a lack of reciprocity.

In response, Plaintiff Samyang shows specific provisions of Korean law making judgments reciprocal.  Specifically, Article 217 of Korea's Civil Procedures Act, Article 26 and Article 27 of Korea's Civil Enforcement Act provide for the enforcement of Ohio judgments within the Republic of Korea..[4]  In response, Defendant Pneumatic Scale shows the affidavit of Professor Jang to the

---

[4]Those provisions provide:

Article 217, Civil Procedures Act (Effect of Foreign Judgment)
A final and conclusive judgment by a foreign court shall be acknowledged to be valid, only upon the fulfillment of all of the following requirements:
1. That the foreign court's right to international jurisdiction over the applicable case is recognized according to the principles of an international jurisdiction pursuant to the Acts and subordinate statutes of the Republic of Korea, or pursuant to the treaties;
2. That a defendant (losing party) received, pursuant to a lawful method, a service of a summons or an equivalent document, and a notice of date or an order, with a sufficient time to defend against the complaint (excluding the case pursuant to a service by public notice or similar service); or that the defendant responded to the lawsuit even without being served;
3. That such judgment does not violate good morals and other social order of the Republic of Korea; and
4. That the two countries acknowledge the respective country's laws and judgments.

Article 26, Civil Enforcement Act (Compulsory Execution by Foreign Judgment)

(continued...)

Case No. 5:05-CV-636
Gwin, J.

effect that, while the laws of Korean require the enforcement of foreign judgments, the practice is

different.

These opinions are insufficient to show a lack of reciprocity.  As described above, the

determination of foreign law is a question of law for the Court's determination, not a question of

fact.  Fed. R. Civ. P. 44(a).  In making this determination, the Court finds that Korea recognizes

Ohio's money judgments.  When seeking to offer evidence that, in practice, Korean does not afford

reciprocal recognition of foreign judgments, Professor Jang offers only examples where other factors

existed that led to the non-recognition, including a lack of personal jurisdiction over parties.

Having failed to show that Korea does not afford reciprocal treatment to Ohio judgments,

the Court finds that Defendant Pneumatic Scale has failed to show that the Korean judgment does

not qualify for enforcement under Ohio Rev. Code § 2329.91.  The Court therefore enforces and

adopts the judgment of the Korean Supreme Court.

## IV. Conclusion

For the reasons set forth above, the Court GRANTS the motion for summary judgment of

---

[4]/(...continued)
(1) A compulsory execution based upon the judgment of a foreign court may be conducted only if a court of the Republic of Korea has made a declaration of its legality by means of a judgment of execution.
(2) A lawsuit seeking a judgment of execution shall be under the jurisdiction of the district court located at the debtor's general forum, and if there exists no general forum, it shall be under the jurisdiction of the court having jurisdiction over a lawsuit against the debtor under the provisions of Article 11 of the Civil Procedure Act.

Article 27, Civil Enforcement Act (Judgment of Execution)
(1) The judgment of execution shall be rendered without re-litigating the merits of the case.
(2) A suit seeking after a judgment of execution shall be turned down in the following instances:
1. If it has not been proved that the judgment rendered by a foreign court has become final and conclusive; or
2. If the foreign judgment does not fulfill the conditions required by Article 217 of the Civil Procedures Act.

Case No. 5:05-CV-636
Gwin, J.

Plaintiff Samyang and DENIES that of Defendant Pneumatic Scale.  The Court gives judgment to

Plaintiff Samyang and against Defendant Pneumatic Scale in the amount of amount of $1,075,668

and 119, 684,250 Korean Won together with interest on both amounts at the rate of 6% per annum

from May 17, 2001, to May 31, 2003, and 20% per year for the period from June 1, 2003, to the date

of this judgment.  The Court retains jurisdiction over this matter to enforce the terms of the Court's

Judgment.

     IT IS SO ORDERED.


Dated: October 21, 2005             s/        *James S. Gwin*
                                       JAMES S. GWIN
                                       UNITED STATES DISTRICT JUDGE